The appeal in our first matter, the mail fraud matter, the 30333 case, rests on the issue of how broad mail fraud liability can be extended for practices which are basic business practices, some may say bad business practices, but nevertheless practices that many businesses engage in. I am quoting from the government's closing argument on page 286 of the E.R. What the government has accused Mr. Kasprowicz of doing is providing oral quotes for moving goods without viewing or weighing the goods. The rest of paragraph 6 of the indictment does not say that he intentionally underbid or that we have to prove that he intentionally underbid. It says he provided oral quotes for moving goods without viewing or weighing the goods and failed to provide accurate and complete information about the weight of the shipments. That is what the government alleges Mr. Kasprowicz did that constitutes an element of mail fraud, and the jury was instructed in a manner that allowed them to answer, yes, Mr. Kasprowicz did this, and find him guilty of the federal crime of mail fraud. The jury was not instructed. Mr. Banas, you've indicated that Mr. Kasprowicz was simply engaged in ordinary business practices. Do you believe that it's an ordinary business practice to use a half a dozen or more aliases and mail drops rather than real addresses? I think that there are many businesses that have many different company names. For instance, Johnson and Johnson. Are there many businesses where the principal uses a false name? No, there are not. And had the jury been clearly instructed that that was the basis on which it must find Mr. Kasprowicz guilty, that would be a different issue. But unfortunately, that was not what the jury was instructed. The jury was specifically instructed to look at the superseding indictment and that if they found anyone, anyone of the alleged material misrepresentations were made, anyone, they could convict Mr. Kasprowicz of mail fraud. Those material misrepresentations included paragraph 6, Mr. Kasprowicz provided oral quotes for moving goods without viewing or weighing the goods and failed to provide  customers with orders for services and receipts for bills of ladings. Was the indictment sent back to the jury room? Yes, it was, Your Honor. It was read to the jury and it was sent back to the jury over Mr. Kasprowicz's objection. And we were extremely concerned about this type of verbiage. We filed multiple motions to strike surplusage. We also asked the Court for a special verdict form so that we would be able to discern which of these various representations stated in the indictment were what the jury found to be fraudulent. We do not know, as we stand here today, if the jury convicted Mr. Kasprowicz of the crime of mail fraud simply because he failed to provide customers with orders for services and receipts for bills of ladings. Can I ask a question? Did the jury instructions in any way ameliorate that issue? I do not believe it did, Your Honor. And if you look at the jury instruction, the language from the instruction, which is set forth in the brief and in the first volume of the excerpts of record at pages 8 to 10, the statement is as I quoted, The representations which the government charges were made as part of the scheme to defraud are set forth in the indictment. The government is not required to prove every misrepresentation charged in the indictment. It is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud. And later on down, the instruction continues, The same principle applies to fraudulent half-truths or omissions of material facts. That is how the jury was instructed. They could find these omissions alone sufficient to constitute mail fraud. Could you go over again which portions of the indictment you think state things that are not that the jury could not properly have relied on? Certainly. In paragraph 2 of the indictment, Your Honor,   customers to call. And it says here, Casperowitz subsequently failed to all amounts to pay all amounts or I'm sorry. We'll start with Casperowitz solicited customers through the Internet and telephone advertisements, providing phone numbers for potential customers to call. And the reason that the law included in there was that he subsequently failed to pay all amounts due for these services. Casperowitz ---- Now, that's true, isn't it? That he failed to pay all amounts. He did fail to pay all amounts due for these services. So how do you parse that particular language to come up with something that you're relying upon? The question is, did he have an obligation to inform his current customers of the status of his third-party vendors? There was not a requirement that the jury find that he engaged or undertook these contracts with no intent to pay, because the evidence was quite mixed on that issue. All of the phone bills were paid. Most of the FedEx bills were paid, except for the ones incurring in late January. Isn't there an excess of $140,000 that wasn't paid to one of these? That certainly was the contention. We contend that that was not proven. The Dex billing ---- But that's a matter of whether it was proved or not. That was an allegation, correct? Well, it was not an allegation that went to the jury. The jury was not asked to find that Dex was not paid. That was not an issue. Dex was not a named victim of the indictment. I realize that. And the jury was not asked to find that Dex was not paid. But the reference to people not being paid in the indictment would have included Dex? Yes. It would have included Dex. Paragraph 6, Kasperowitz provided oral quotes for moving goods without viewing or weighing the goods and failed to provide accurate and complete information about the weight of the shipments. Paragraph 8, Kasperowitz failed to provide customers with orders for services and receipts for bills elating. Paragraph 7, Kasperowitz induced individuals to hire his household goods and commercial business to transport goods by quoting a low bid. Once the goods were picked up, either by third party or by Mr. Kasperowitz, he called the customer, increased the price for the move, and demanded additional payment. What the jury didn't have to find was that he did so without a basis. The mere fact, for instance, take the shipment of the motor of the motorcycle from Oregon off to Dublin. UPS was the original intended individual to transport this. Their quote was almost $900. Mr. Kasperowitz quoted $11. UPS refused when they found it was rebuilt. They would not transport it. The subsequent quote was $1,800. Under the government's theory of mail fraud, Mr. Kasperowitz had to be willing to accept and swallow the loss of $200 as opposed to saying, I'm sorry, UPS won't take the shipment. It's going to cost more. I'm going to charge you more. And so the government's theory of mail fraud was that UPS would not take the shipment   of the motorcycle from Oregon. There was no requirement in the indictment that Mr. Kasperowitz have an illegitimate reason for increasing the price. But isn't there an overarching scheme here that ties all of this together? This fellow is hiding his identity using mail drops, misleading the people, deceiving the people. That is certainly the government's scheme. Isn't that the scheme that they're alleging? The scheme is what they alleged in the indictment, the specific acts alleged in the indictment. And you get to paragraph 6 and paragraph 8. Is that the scheme or are those just some of the things he did in carrying out the scheme? That's how they define their scheme. Our scheme includes these delineations in paragraph 6 and paragraph 8. And if you find any one to be true, you do not have to find the rest to be true. You can find any one to be true, and they could convict of mail fraud without informing Mr. Kasperowitz that if he did not view goods before he provided a bid, if he did not provide complete and total bills of lading, he would somehow be committing the Federal crime of mail fraud. How can any business know, based upon this type of scheme to defraud instruction that was given to Mr. Kasperowitz's jury, whether or not they are specifically engaging in a type of mail fraud if they don't provide sufficiently complete information to their clientele? And it was not required that the government prove that these individuals lost anything, that they suffered any specific losses. The government never provided evidence of what the fair market value of these various shipments were. We have no evidence that Mr. Kasperowitz did not provide a good exchange. You have 5,000 pounds to get to Hawaii, Ms. Haynes. This is what it's going to cost you. You have a motorcycle to get to Dublin. This is what it's going to cost you. You have dressers to get from Colorado to North Carolina in very specific ways. This is what it's going to cost you. There is no evidence that what Mr. Kasperowitz charged these people was unreasonable, was not fair. Aren't you asking us to say that the government had to prove that everything was illegal as opposed to proving that there was a scheme and then that there were these separate acts of fraud, mail fraud? The problem becomes when you start defining the scheme that broadly, for instance, as in the Green case, and there's no requirement to prove loss. What is a scheme to defraud but any business? Every business wants your money. Well, yes, but they don't want it by deceiving you. That's the difference. Deceiving is the sin cuanon of the scheme to defraud. And if there was a requirement for specific deceit in these various paragraphs, that might alleviate some of the problem. But some of your argument seems to be that because he provided the service, it can't possibly be a scheme to defraud. I could tell you, look, I'm a rising young star on the golf tour, and you're a collector of autographs. I'll sell you my autograph for $100. So you buy it. You got exactly what I said I was going to give you, but I did deceive you because I'm not a rising young star on the golf tour. And if the instruction was simply find that he was not a rising young star on the golf course, and that's a false material misrepresentation, an active material misrepresentation. But first you have to find the scheme, right? The law is based upon the material misrepresentation, i.e., the statement, I am a rising star on the golf course. Why does the allegation that he concealed material facts suffice in the indictment? I'm sorry, Judge Woodlaw, I did not quite hear that. Okay. I'm sorry. My question is concealment is an active act of deception. Why isn't that sufficient? Why is concealment not sufficient, Your Honor? Yes. Okay. That's from the recent Green case. And if you look at the language of the Green case, they specifically discuss a concern that once you start down the road of concealment, you can take the issues of fraud --" I'm trying to find the precise quote --" that fraud liability at that point kind of devolves to the right to, quote, make an informed decision, and that there is a concern that, quote, there is no principled limit to the reach of the statute once you go down that concealment road. However, quote, financial harm to the victim is an integral part of the offense in the Green case, so that there, there is no requirement for any further limitation on the fraud statute. So when you had concealment in Green, what you had was the actual active proof of substantial losses, and therefore, there wasn't the concern. That is where we are extremely distinct. There is the government alleges concealment. We allege that specific of these actions are not active concealments. They're just failures. For instance, provided oral quotes for moving goods without viewing or weighing the goods and failed to provide accurate and complete information about the weights of shipments is not necessarily a concealment. And then there is no proof of any actual losses to these victims. Isn't using a mail drop as your address an active concealment of your real address? I mean, there were people who tried to find him. They couldn't find him. One of these people even tried to hand deliver. I think it was a check, but it was a mail drop, and they wouldn't take it. That sounds like active concealment to me. There are many small businesses that do business out of P.O. boxes. And if we're going to start saying doing business out of a P.O. box. Under multiple names and multiple mail. I mean, he was actively concealing who he was. I mean, he knew that he was unable to participate in a related business under Oregon law. He had agreed to that in that settlement. So isn't he just concealing who he is in order not to possibly run afoul of the limit on his ability to conduct business? Not every transaction alleged violated. Several of them don't. But that would be a reason why he's actively concealing who he is. And if the limitation was to concealment with losses, as in green, that's a different issue. We don't have active concealment in every single one of these applications. Doesn't that get back to my earlier question? I gave you the autograph. And in fact, I was actively concealing who I was.  What's the difference? Affirmative misrepresentation, definitely improper. That is clearly established Ninth Circuit case law. That is what the jury should have instructed. If I tell you I am a rising star, but if you walk up to me and say, may I have your autograph, and you tell me $100, and I assume you are a rising star. But Mr. Kasparov was billing himself to be not allied van lines, but something suspiciously similar, allied this, and then he had about seven other aliases. Isn't that the same thing? He's holding himself out to be something he's not? He is holding himself out to be a shipper in various names. Now, if he's sufficiently close to allied van lines. Well, I held myself out in the example to be a signer of a piece of paper and a name that wasn't true. I'm not sure I'm understanding that question. All right. Well, maybe I didn't understand your response. But I thought go ahead. I don't mean to keep all of your time monopolized. Yes, Your Honor. Thank you. May it please the Court, my name is Amy Potter, and I represent the United States. In this case, the district court properly stated the elements of mail fraud, which are a scheme to defraud, that the defendant acted knowingly, that the statements were material, that he acted with the intent to defraud, and that he used the mails in furtherance of his scheme. Everything that the government alleged, they alleged Mr. Kaskowitz did with the intent to defraud. And that is the key. That is what separates him from a business that normally has a mail drop. He didn't have a mail drop because he just had a mail drop. He had a mail drop because he was intending to defraud his customers. He was attempting to make it impossible for them to find him, much like he used phone numbers because he didn't know what name he used with any particular customer. So he had to get a voicemail so he knew whether they were calling for Jay or John or any of the other people that he had impersonated and pretended to be. So this was a gentleman who acted with the intent to defraud. And the district court's jury instructions clearly encompass that. Well, can you specifically address Ms. Mona's concern that the judge at some point told the jury if they agreed on any of these things in the indictment, then he was guilty? Well, I think there's two parts to that. First of all, the Ninth Circuit case law doesn't require the jury to agree on any particular misstatement. That was the defense's request, and the judge gave it. But overall, we have an overarching scheme to defraud. So regardless of which one they agreed on, they agreed that that misstatement was part of a scheme to defraud and involved the intent to defraud. So giving bids, you know, under bidding to get the customer, he did that with the intent to defraud. So may I ask a question here? I've been troubled by one aspect of the jury instruction. This is Ms. Potter. Is that his name right? Yes, Your Honor. All right. Thank you. So there is one section of the jury instruction that does seem to extend the principle of materiality to omissions of material facts, that we know under Ninth Circuit law that mere omissions cannot sustain a fraud conviction unless it's an independent duty to disclose. So does that make the jury instruction defective? Because if, for example, one of the things that the jury agreed on, or even the only thing the jury agreed on, was that he failed to disclose who he really was and what his business really was. Well, Your Honor, yes, the jury instructions refer to omissions. But in fact, there are several Ninth Circuit cases that hold omissions or concealment of material facts can be part of a scheme to defraud, particularly in a case like this where you have affirmative statements. And when the failure to disclose certain information leaves the affirmative statements, it would make them clearer to the customer. And in fact, the Green case, the Sayocum case, the Beecroft case, and Munoz and Lyons all hold that omissions, and particularly the instruction given by the district court. And let me be clear, the Ninth Circuit model instruction specifically refers to omissions. So that is the same instruction that was given in those cases. And in some instances, when you speak, you have a duty to clarify what you are saying. And in this case, the defendant had just that obligation. Well, what gave rise to that duty? When he tells someone, for example, I've been in the business for 20 years, he, he, well, first of all, he as Jay, as Allied Shipping, hadn't been in the business for 20 years. And when he says something like that. So that's not an omission. That's a material misrepresentation. Right. But then I think the omission she cites too is whether he omitted that he had been enjoined by the District of Oregon. I mean, I'm sorry, by the State of Oregon. And so when he says I've been in the business for 20 years and I'm Jay from Allied Shipping, he's failing to disclose or concealing the fact that he is, in fact, Lester Kasparowitz and he's been enjoined by Oregon from Shipping Goods in Oregon. So again, I think the district court properly instructed the jury on the scheme to defraud and the intent to defraud elements of mail fraud. There's nothing erroneous about the instructions given by the district court in this case. If the court has no further questions for me on this or the other case. I have a question on the first case. I am also concerned about materiality findings. The findings with respect to the obstruction of justice. And I'm concerned that the findings by the district court were not sufficient on materiality to link, for example, the statement by Sally Cook. The district court says I've been specific about relying on Sally Cook and that's principally what I rely on. And it stood out to me as well. But I don't see how the W-2 wages, income and tax returns, which were found to be false, but how he didn't make a finding, the district court judge did not make a finding to say were material to the conviction. The parties argued materiality to the district court and the district court found that the obstruction enhancement applied. The district court does not specifically address materiality in doing so. However, the statements that the district court found false all had to do with how defendant operated his business. Specifically, he denied ever affiliating himself with allied van lines. He denied having an employee that he then used the name of that employee to obtain his driver's license so that he could drive and rent the trucks to move. And the tax returns he referred to income that he did not have. So the district court obviously found that that was material to the overarching theme of the case and applied the obstruction enhancement. So where did he make that finding? I'm sorry, Judge Moorlach, I did not hear. Where in the transcript does he make that finding? It's interesting because the PSR did not recommend an enhancement for obstruction of justice. I'm sorry, you said it's interesting that the PSR did not what? There wasn't a recommendation. So I can't find a place in the transcript where the district court linked the incident he mentioned to a finding of materiality. I don't think – I want to be clear, and I apologize if I misstated anything. The district court never says in the transcripts the word materiality. The parties certainly briefed the issue of materiality before the district court, and he indicates that he had read all of that information. But you are correct that I don't believe the district court says the word material when holding the obstruction of justice. But isn't that a required finding for the enhancement? Well, I think the district court says it reviews the entire record, so you can take from that that the district court is finding those statements to be material. Well, but isn't it correct, Ms. Potter, that the one thing that Judge Mossman referred to was the Sally Cook matter? I mean, that's what he said he remembered and was relying on. He didn't – he recounted a number of other things that may well have been established at trial, but it doesn't appear to me that the judge relied on those. He does say specifically that Sally Cook testimony and the W2 testimony are what stood out to the district judge. And he doesn't say anything else, does he? Does he identify anything else? No, he says he's – he identified earlier – he asked the government to list out all of the things. He reviewed them, and then he says he's specifically relying on Sally Cook and the W2. Yes, Your Honor, that's correct. Wouldn't it then be a fair reading of this record to say that if the Sally Cook and W2 matters weren't material, then that's not an adequate basis for the enhancement? If this Court finds they are not material, then, yes, the district court does not. All right. That's what I'm asking. Assuming they aren't material, then there's not enough in the record to support it. Not on this record, no, Your Honor. All right. If the Court has no further questions, we would request that the judge – Well, nobody said anything about the second case, but I don't know whether Judge Wardlaw or Judge Preggerson have more on this one. I don't have more on this, and I'd be willing to use the second case. No, I have no further questions. My defense counsel did not address the second case, but I'm happy to address any issues on that second case. Judge Preggerson, should we give defense counsel a couple of extra minutes to address the second case? You want to talk about the second case? But, you know, you knew that you had 15 minutes for both. Yes, Your Honor. You can use your time for that, the time you have left. What? She's over the limit. Oh, you're over your time. Well, we'll give you a minute. Thank you, Your Honor. The second matter, Your Honor, is the bank fraud case. There are two issues, one of which is that the government has conceded it will, in fact, go back for determination of restitution. We have briefed fully the issue that we believe the guideline loss should also be dated from the same time frame, because that was when the house went back to the bank. The bank could, at that point, mitigate its damages by selling that house, and Mr. Kasterowitz was no longer responsible for what was going on with the property values. But in a nutshell, you concede that the approach here is to value it at the other time, except you think because of the vagaries of the market that this is an exception? Yes, Your Honor. I think given the exceptional vagaries of the market, at the time Mr. Kasterowitz purchased this home and at the time he built it and obtained both mortgages, he had significant overvalue. He, we believe, were entitled to discovery on the issues of vindictive prosecution, and those are fully briefed. But at the very least, we believe that the fact that Mr. Kasterowitz never intended to not pay for this home, and due to factors well beyond his control, including the timing of the sentencing, which was based on court considerations and considerations of the probation office, not Mr. Kasterowitz's fault, valuing it solely on the date of the sentence was inaccurate. It really did not compute based upon Mr. Kasterowitz's conduct. It computed based upon factors in the market and in the court's own calendar well beyond his control. That's why we urge that that's the law state. Specifically, I am over time. I would only note that every case where omissions have been a basis for fraud, there has been a duty. And the Third Circuit pattern jury instruction with Ms. Potter quoted to this case that she believes was close to the instruction given to Mr. Kasterowitz's jury omitted the most critical language. The failure to disclose information may constitute a fraudulent representation if the defendant was under a legal, professional, or contractional duty to make such a disclosure. He knew such disclosure ought to be made, and he failed to make such disclosure. There is no evidence that Mr. Kasterowitz was ever informed he had a duty to disclose any of the facts listed in the second superseding indictment, such as this civil settlement, such as that he was giving an oral quote. Which case are you talking about now? That's the Third Circuit pattern jury instruction. Which case? Which of your two cases? The Muniz cases. Are you talking about 334 or 333? I'm sorry. The mail fraud case, Your Honor. I thought you were supposed to talk about the other case. Thank you. Thank you, Your Honor. Your Honor, on the matter of the 334 case, we have conceded an error in restitution, but we want the remand limited to that. We believe sentencing, the district court did precisely what the guidelines advised the district court to do, and that is value the property and the date of sentencing. It did that, and the loss calculations were appropriate. Also, to be clear, it was the loss calculations for the fraud case. It was the fraud case that drove the guideline calculation because they were correct. Fair enough, fair enough. Do you have anything to say about the vindictive prosecution argument? The district court did not abuse its discretion in not holding an evidentiary hearing. Everything she has alleged deals with pre-indictment conduct. She has not met the bare minimum standard for vindictive prosecution and was not entitled to a further evidentiary hearing or discovery. Thank you, Your Honor. Very well. Thank you very much. And these matters are submitted, and the court will adjourn. Thank you. The court for this session stands adjourned.
judges: Pregerson, Wardlaw, Cjj Sedwick (Alaska), Dj